Opinion by
 

 Reno, J.,
 

 Appellants,
 
 [1]
 
 husband and wife, were convicted in a summary proceeding before an alderman and on appeal in the court below of violating the compulsory attendance provisions of the School Code.
 

 The offense was committed on January 19, 1949, and the applicable statute is the Act of May 18, 1911, P. L. 309, §1414, as last amended by the Act of June 24,1939, P. L. 786, §2, 24 PS §1421. It requires “every parent ... of any child or children of compulsoi’y school age [between the ages of eight and seventeen years] ... to send such child or children to a
 
 day school
 
 . . .; and such child or children shall attend such school
 
 continuously
 
 through the entire term . . . Provided, That the
 
 *138
 
 certificate of any principal or teacher of a
 
 private school,
 
 or of any
 
 institution for the education of children . . .
 
 setting forth that the work of said school is in compliance with the provisions of this act, shall be sufficient and satisfactory evidence thereof: . . . Begular daily instruction ... by a properly qualified
 
 private tutor,
 
 shall be considered as complying with the provisions of this section, if such instruction is satisfactory to the proper county or district superintendent of schools.”
 
 [2]
 
 (Emphasis added.) Provision is made for the allowance of other exceptions which are not material to this case.
 

 It will be observed that the requirement of compulsory attendance can be satisfied in a “day school” which may be a public school, “a private school,” or an “institution for the instruction of children.” The last two classifications include parochial or denominational schools. Daily instruction by an approved private tutor will also satisfy the statute.
 
 [3]
 

 The provision that children shall attend “continuously through the entire term” recognizes the obvious fact that each day’s school work is built upon the lessons taught on the preceding day. It is virtually impossible properly to educate a child who is absent one day a week. Friday’s instruction is the foundation for understanding Monday’s lesson. By such regularly recurring absences the child loses not only one-fifth of the instruction, but the continuity of the course of study is broken and the pupil is not able to keep pace with his classmates. The requirement is reasonable and enforceable.
 

 Appellants are Mohammedans, and they have persistently refused to send their children of compulsory attendance age to school on Fridays, the sacred day of
 
 *139
 
 that religion. They have sent them to the public schools on all other days except Friday. They invoke the guarantees of religious freedom contained in the State and Federal constitutions.
 
 [4]
 
 Appellants were convicted for the same offense in 1943 and 1944.
 

 At common law the most important duty resting upon parents was to give their children “an education suitable to their station in life.” Having stated the duty, Blackstone lamented: “Yet the municipal laws of most countries seem to be defective in this point, by not constraining the parent to bestow a proper education upon his children.” Nevertheless, he discerned that the right of the parent to give or withhold an education was not absolute or unlimited. In the apprenticing laws of his day he discovered power in the state to subject at least some children to educative processes. “. . . [T]he poor and laborious part of the community, when past the age of nurture, are taken out of the hands of their parents, by the statutes for apprenticing poor children, and are placed out by the public in such a manner, as may render their abilities, in their several stations, of the greatest advantage to the commonwealth.” 1 Commentaries 451. See also 47 Am. Jur., Schools, § §6, 156.
 

 In Pennsylvania the power of state to require that children be educated has never been doubted. Even aside from the constitutional provisions establishing the common school system the appellate courts, though recognizing the natural right of control by parents, held that the right may be restricted and regulated by law. In an early case (1839) the Supreme Court, in a per curiam opinion, said: “It is to be remembered that the public has a paramount interest in the virtue and knowledge of its members, and that of strict right,
 
 the business of education belongs to it.
 
 . . .
 
 The right of parental control is a natural, but not an unalienable one.
 
 It is not
 
 *140
 
 excepted by the declaration of rights out of the subjects of ordinary legislation; and it consequently remains subject to the ordinary legislative power which, if ivantonly or inconveniently used, would soon be constitutionally restricted, but the competency of which, as the government is constituted, cannot be doubted.” (Emphasis added.)
 
 Ex Parte Crouse,
 
 4 Wharton 9, 11. In short, parents have no constitutional right to deprive their children of the blessings of education or prevent the state from assuring children adequate preparation for the independent and intelligent exercise of their privileges and obligations as citizens in a free democracy.
 

 In
 
 Teachers’ Tenure Act Cases,
 
 329 Pa. 213, 223, 197 A. 344, Mr. Chief Justice Kephart lucidly and cogently expounded the power of the state in education. “The Constitution of Pennsylvania, by Article X, Section 1, not only recognizes that the cause of education is one of the distinct obligations of the State, but makes of it
 
 an indispensable governmental function.
 
 The power of the State over education thus falls into that class of powers which are made
 
 fundamental to our government.
 
 In the abstract it is not an absolute essential to government as taxation, law enforcement and preservation of the peace are essential, but by the express provision of the Constitution it ranks with them as an element necessary for the sustenance and preservation of our modern State. Education is to-day regarded as one of the bulwarks of democratic government. Democracy depends for its very existence upon the enlightened intelligence of its citizens and electors.” (Emphasis added.)
 

 Speaking for this Court, Judge Orlady said in
 
 Com. v. Gillen,
 
 65 Pa. Superior Ct. 31, 36: “It must be conceded by all right thinking persons, that the enforcement of the compulsory school code is a matter of paramount importance, to which the views of the individual view [sic] must yield, and this must be so, whether such view is based on a prejudice against a legislative requirement,
 
 *141
 
 or even a conscientious difference of opinion as to a health regulation.” More recently the Supreme Court of the United States has held: “But the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. . . . And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth’s well being,
 
 the state as parens patrice may restrict the parent’s control by requiring school attendance,'
 
 regulating or prohibiting the child’s labor and in many other ways.
 
 Its authority is not nullified merely because the parent grounds his claim to control the child’s course of conduct on religion or conscience.” Prince v. Massachusetts,
 
 321 U. S. 158, 166, 64 S. Ct. 438, 442. (Emphasis added.)
 

 Thus, in this realm the right of the state is superior to that of the parents. It is subject to only one limitation. Parents cannot be compelled to send their children to public schools exclusively and debar them from attending parochial or private schools. While it recognized “the power of the state ... to require that all children of proper age attend some school”, nevertheless the United States Supreme Court held in
 
 Pierce v. Society of the Sisters of the Holy Names,
 
 268 U. S. 510, 534, 535, 45 S. Ct. 571, 573: “The fundamental theory of liberty upon which all governments in this Union repose excludes any general power of the State to standardize its children by forcing them to accept instruction from public teachers only.” See also
 
 Myer v. Nebraska,
 
 262 U. S. 390, 43 S. Ct. 625. Our statute is completely free of objection upon that score. It permits attendance at private and parochial schools. All that it requires is continuous attendance at a day-school of the kind and character mentioned in the statute, or daily instruction by a private tutor. Since the parent may avail himself of other schools, including parochial or denominational schools, the statute does not interfere with or impinge upon the
 
 *142
 
 religious freedom of parents or the guarantees of either the Federal or State constitution. The requirement is within the constitutional power of the state.
 

 Having exercised the option provided by the statute and elected to send their children to the public schools, appellants are bound to perform all the requirements of the compulsory attendance provisions. They cannot send their children to the public schools upon condition that they shall be excused on Fridays. - They have no constitutional right to submit to only a part of the statute or to a part of regulations made pursuant to it.
 

 Judgment and sentence affirmed.
 

 [1]
 

 No question has been raised concerning the right of appellants to maintain a joint appeal, and no objection has been made to the form of the order entered by the court below. Both sides desire a ruling on the merits of the constitutional question involved in the appeal, and we shall not notice mere technical errors.
 

 [2]
 

 This section has been substantially reSnacted by section 1327 o£ the Public School Code of 1949, P. L. 30.
 

 [3]
 

 Private or parochial schools may, like public school authorities, designate Friday or any other day as the weekly holiday instead of Saturday. School Code, supra, §1603, 24 PS §1534.
 

 [4]
 

 U. S. Constitution: First and Fourteenth Atuenchneirts. Pennsylvania Constitution: Article I, Section 3,