LILA MEYERKORTH ET AL., APPELLANTS, V. STATE OF
NEBRASKA ET AL., APPELLEES.
115 N. W. 2d 585
Filed June 8, 1962. No. 35210.

*Crosby, Pansing, Guenzel & Binning* and *Theodore L. Kessner*, for appellants.

*Clarence A. H. Meyer*, Attorney General, *Dwain L. Jones*, and *Melvin K. Kammerlohr*, for appellees.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ., and CHADDERDON, District Judge.

MESSMORE, J.

The plaintiffs brought this action for declaratory judgment in the district court for Lancaster County, the purpose of the action being to declare sections 79-201, 79-1201 et seq., and 79-1701 et seq., R. R. S. 1943, and the regulations pursuant thereto which provide for compulsory school attendance, certification of teachers, and for the operation and supervision of parochial schools unconstitutional and a void attempt to exercise the police power of the state. As will hereinafter appear, the sections of the statutes necessary to a determination of this appeal provide for compulsory school attendance, certification of teachers, and for the operation and supervision of parochial schools.

The plaintiffs' contention is that said sections of the statutes are unconstitutional to the extent that they abridge and prohibit the plaintiffs' free exercise of their

religious beliefs, and any attempt on the part of the State to close the school operated by the plaintiffs would be unconstitutional and void.

The defendants demurred to the plaintiffs' amended petition on the grounds that it failed to state a cause of action against the defendants. The demurrer of the defendants to the amended petition was sustained. The plaintiffs elected to stand on their amended petition, whereupon the trial court dismissed the plaintiffs' amended petition. The plaintiffs filed a motion for new trial which was overruled, and the plaintiffs perfected appeal to this court.

The plaintiffs' assignment of error is that the trial court erred in sustaining the demurrer of the defendants to the plaintiffs' amended petition, and in dismissing the plaintiffs' amended petition.

The plaintiffs' amended petition alleged that defendant Freeman Decker was the Commissioner of Education of the State of Nebraska; that the defendant Helen Hanika was the county superintendent of Richardson County; that the plaintiff Lila Meyerkorth was a resident of Richardson County; that the Emmanuel Association was a religious body with headquarters in Colorado Springs, Colorado; that the Emmanuel Association and its members, of which Lila Meyerkorth is one, provide places of worship for members in several states, including the State of Nebraska; and that the churches which follow the doctrine of the Emmanuel Association are owned and operated by the members of each local congregation who have local autonomy over the conduct and affairs of each individual church.

The amended petition further alleged that one of such churches is near Shubert, Richardson County, Nebraska, of which Lila Meyerkorth, plaintiff, is a member; that the plaintiff, as a member of an association of Christian parents, had employed one Eleanor Berry, whom she believed to be a qualified Christian teacher, qualified to educate her children spiritually and intellectually in a

religious atmosphere, and pursuing the religious doctrines and beliefs of the members of the Association; that plaintiff and other parents were fully aware of the physical facilities available at the public schools in the vicinity as well as the teachers and the courses of study offered at such schools; that in like manner, plaintiff and other parents were aware of the professional training and education of the said Eleanor Berry, and with this full awareness, desired to employ said Eleanor Berry to tutor their children spiritually and intellectually so that the education of said children could be conducted in a particular religious atmosphere, and with the belief that said education is of equal or better quality to that provided in the public schools or other schools in the vicinity; that the plaintiff and other parents know the manner in which Eleanor Berry conducts the tutoring of their children, know the facilities available to the children, and are satisfied that the teachings and education are being conducted in their proper religious atmosphere which they desire for their children; that the defendants and each of them are threatening to close said Richardson County school by enforcement of the unconstitutional teacher qualifications and compulsory school attendance statutes and regulations, alleging that the school and the teacher, Eleanor Berry, are not qualified under the said statutes of the State of Nebraska; that the defendants and each of them are threatening to prevent plaintiffs from hiring Eleanor Berry as a private tutor for their children by the enforcement of the unconstitutional compulsory school attendance statutes; that the Commissioner of Education has informed Eleanor Berry that he would not grant unto her a Nebraska teaching certificate, for the reason that she does not meet the qualifications prerequisite to the issuance of such a certificate and that he will not recognize her college credits and degree; that said qualifications, as shown on exhibit A attached and incorporated by reference, are a void and unconstitutional attempt to exercise

the police power of the State of Nebraska; that the Commissioner of Education and the Richardson County superintendent of schools, with the aid and assistance of the Attorney General's office and the Richardson County attorney, have attempted to close said school and deny plaintiff and other parents the right to have their children educated in the religious atmosphere desired by plaintiff; that said defendants have threatened to start criminal and other proceedings against the plaintiff and other parents to compel them to send their children to other available schools, which said schools do not have the proper religious atmosphere as is available to the children of the plaintiff and other parents under the tutoring of Eleanor Berry; that the concerted efforts of the defendants and each of them to compel the plaintiff and other parents to send their children to other schools and to deny them the right to the tutoring of Eleanor Berry and the proper religious atmosphere for their education, is allegedly being done under authority granted to the defendants by section 79-201, section 79-1201 et seq., and section 79-1701 et seq., R. R. S. 1943; that said statutes provide for the compulsory school attendance of children for prescribed number of days, certification of teachers, and for the operation and supervision of parochial schools; that the efforts of the defendants to enforce the statutes as above set forth is in violation of the freedom of religion and the right of free exercise of religion guaranteed to the plaintiff by the Constitution of the United States and the Constitution of the State of Nebraska; that such statutes are an arbitrary, unwarranted, and an invalid attempt to exercise the police power of the State of Nebraska to infringe upon the aforesaid freedom and rights of the plaintiff; and that plaintiff and others similarly situated have paid and will pay all taxes properly levied for the support of the public school but declare and believe that it is their fundamental right, given by God and the Constitutions of the United States and the State of Ne-

braska, to educate their children under their own supervision as parents free from interference by the officials of the State of Nebraska except for such tests by such officials as may be reasonable and proper to determine that satisfactory educational levels are reached by such children under such parental education.

"Declaratory judgment proceedings have frequently been employed to determine questions as to the construction or validity of statutes." Thorin v. Burke, 146 Neb. 94, 18 N. W. 2d 664. See, also, Nebraska Seedsmen Assn. v. Department of Agriculture & Inspection, 162 Neb. 781, 77 N. W. 2d 464.

The Declaratory Judgments Act is applicable to this case.

"A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact. * * * In passing on a demurrer to a petition, the court will consider an exhibit attached thereto and made a part thereof." Elliott v City of Auburn, 172 Neb. 1, 108 N. W. 2d 328.

The plaintiffs state that all of the allegations of their amended petition are admitted by the defendants' demurrer. Defendants' demurrer does not admit that the effort to enforce the statutes complained of by the plaintiffs violate freedom of religion and the right of free exercise of religion guaranteed by the Constitution of the United States and the Constitution of the State of Nebraska, nor does the demurrer admit that such statutes are arbitrary, unreasonable, or invalid. Such questions are questions of law to be determined in this appeal.

The defendants contend that the statutes complained of by the plaintiffs are valid and constitutional.

The plaintiffs cite Article I, section 4, of the Constitution of the State of Nebraska which provides in part: "All persons have a natural and indefeasible right to

worship Almighty God according to the dictates of their own consciences. No person shall be compelled to attend, erect or support any place of worship against his consent, and no preference shall be given by law to any religious society, nor shall any interference with the rights of conscience be permitted. * * * Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the legislature to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction."

The plaintiffs also cite the First Amendment to the Constitution of the United States which provides in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; * * *."

The plaintiffs cite section 1 of the Fourteenth Amendment to the Constitution of the United States which provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The plaintiffs contend that the statutes and regulations of the State of Nebraska and the Nebraska Department of Education for the regulation of nonpublic schools go beyond protecting the interests of the state, and violate the constitutional rights of parents to educate their children in accordance with the tenets of their religious faith.

In support of their contention the plaintiffs cite the following sections of the statutes: Sections 79-201, 79-1201, 79-1247.02, 79-1701, 79-1705, and 79-1706, R. R. S. 1943, and section 79-1210.01, R. S. Supp., 1961.

Section 79-201, R. S. Supp., 1961, provides: "Every person residing in a school district within the State of

Nebraska who has legal or actual charge or control of any child, not less than seven nor more than sixteen years of age, shall cause such child to attend regularly the public, private, denominational, or parochial day schools each day that such schools are open and in session except when excused by school authorities, unless such child has been graduated from high school. The term shall not be less than nine months in any district; Provided, that districts unable to maintain a nine months school with a twelve mill levy, when supplemented by the state apportionment may, with the approval of the electors of that district, maintain an eight months school. Under no circumstances shall the school term be less than eight months."

Section 79-1201, R. R. S. 1943, provides: "Teachers' certificates issued by the authority of the State of Nebraska and entitling the holders thereof to teach in the public, private, denominational, parochial, and state-operated schools of this state, shall be issued by the Commissioner of Education to all persons of sound mental and physical health and good moral character upon the recommendations of the Board of Regents of the University of Nebraska, the State Board of Education for Normal Schools and Teachers Colleges, and the governing bodies of other Nebraska institutions of higher education."

Section 79-1210.01, R. S. Supp., 1961, provides: "The Nebraska Rural Elementary School Certificate shall, after July 1, 1965, be valid in kindergarten to eighth grade inclusive for a period of five years in schools organized as Class I school districts, and be valid in kindergarten to sixth grade inclusive for a period of five years in schools organized as Class II school districts. The requirements for this certificate shall be a recommendation as an elementary teacher and a minimum of sixty-four semester hours of college credit from a standard institution of higher education in Nebraska or another state. The college preparation shall include at

least forty-five semester hours of college credit in the generally recognized subjects and areas of instruction taught in elementary grades and fifteen semester hours of education including not less than three semester hours of supervised teaching or the equivalent. This certificate may be renewed any number of times for a period of five years upon the presentation of eight additional semester hours of college credit applicable toward a baccalaureate degree from a standard institution of higher education."

Section 79-1247.02, R. R. S. 1943, provides: "(1) The State Department of Education shall establish a procedure for accrediting the elementary and secondary schools of Nebraska, both public and private. The major purposes of such procedure shall be to maintain adequate school programs, and to encourage and assist schools in their purpose of increasing better instructional opportunities for the boys and girls of Nebraska. (2) The Commissioner of Education is authorized to appoint an accreditation committee, which shall be representative of the educational institutions and agencies of the state and shall include as a member the director of admissions of the University of Nebraska. (3) The accreditation committee shall be responsible for: (a) Formulating appropriate standards and policies with respect to the accreditation and classification of schools, and (b) making recommendations annually to the commissioner relative to the accreditation and classification of individual schools. No school is to be considered for accreditation status which has not first fulfilled all requirements for an approved school."

Section 79-1701, R. R. S. 1943, provides: "All private, denominational, and parochial schools in the State of Nebraska, and all teachers employed or giving instruction therein, shall be subject to and governed by the provisions of the general school laws of the state so far as the same apply to grades, qualifications, and certification of teachers and promotion of pupils. All private,

denominational, and parochial schools shall have adequate equipment and supplies, and shall be graded the same and shall have courses of study for each grade conducted therein, substantially the same as those given in the public schools where the children attending would attend in the absence of such private, denominational, or parochial schools."

Section 79-1702, R. R. S. 1943, provides: "No person shall be employed to teach or teach in a private, denominational, or parochial school who has not obtained a teacher's certificate entitling such teacher to teach corresponding courses or classes in public schools where the children attending would attend in the absence of such private, denominational, or parochial school."

Section 79-1705, R. R. S. 1943, provides: "The county superintendent in first class school districts, or the superintendent of schools in all other districts, where any private, denominational, or parochial school is located, shall inspect such schools and report to the proper officers any evidence of the use of any textbooks or of any activities, instruction, or propaganda therein subversive to American institutions and republican form of government or good citizenship or of failure to observe any of the provisions of sections 79-1701 to 79-1707. The State Board of Education shall require the several county superintendents and superintendents of schools to make such inspections at least twice a year, and the school officers of such schools and the teachers giving instruction therein are required to permit such inspection and assist and cooperate in the making of the same."

Section 79-1706, R. R. S. 1943, provides: "In case any private, denominational, or parochial school after a final determination by the proper authorities under sections 79-1701 to 79-1706 fails, refuses, or neglects to conform to and comply therewith, no person shall be granted or allowed a certificate to teach therein, and the pupils attending such school or schools shall be required to attend the public school of the proper district

as provided by law in like manner as though there were no such private, denominational, or parochial school. Full credit for certification under the law shall be given all teachers who have taught in private, denominational, or parochial schools the same as though they had taught in public schools."

The plaintiffs argue that the certification of teachers as provided for in sections 79-1701 and 79-1702, R. R. S. 1943, above set forth, and the minimal school standards provided for by sections 79-1701 and 79-1705, R. R. S. 1943, above set forth, and the regulations promulgated by the Nebraska Department of Education, have no relevance to the interests of the state in children not educated in public, tax-supported schools; that none of these, not one section or phrase, have any materiality to testing children educated in parochial schools to ascertain if they know the language of their country, understand its government, and are able to participate in the democratic process; and that the above-mentioned sections and regulations infringe upon the rights of the parent and the constitutional right guaranteed to the citizens of the State of Nebraska.

The plaintiffs cite Nebraska District of Evangelical Lutheran Synod v. McKelvie, 104 Neb. 93, 175 N. W. 531, 7 A. L. R. 1688, wherein this court held: "Chapter 249, Laws 1919, does not prohibit the teaching of a foreign language if taught in addition to the regular course of study in the elementary schools, so as not to interfere with the elementary education required by law, and outside of regular school hours during the required period of instruction." The court further said: "All private, denominational and parochial schools and all teachers employed or giving instructions therein, shall be subject to and governed by the provisions of the school laws of the state as to grades, qualifications and certification of teachers. They are required to have adequate equipment and supplies, and shall have grades and courses of study substantially the same as the public

schools where the children will attend in the absence of private, denominational or parochial schools. Nothing in the act is to be construed as interfering with the religious instruction in such schools. * * * Instruction is required to be given in American history and in civil government, both state and national, such as will give the pupils a thorough knowledge of the history of our country, its Constitution and our form of government, and such patriotic exercises shall be conducted as may be prescribed by the state superintendent. It is also provided that nothing in the act contained shall be so construed as to interfere with religious instruction in any private, denominational or parochial school. * * * The state should control the education of its citizens far enough to see that it is given in the language of their country, and to insure that they understand the nature of the government under which they live, and are competent to take part in it. Further than this, education should be left to the fullest freedom of the individual. * * * Neither the Constitution of the state nor the Fourteenth amendment takes away the power of the state to enact a law that may fairly be said to protect the lives, liberty and property of its citizens, and to promote their health, morals, education and good order. '* * * it surely is not an arbitrary exercise of the functions of the state to insist' that the fundamental basis of the education of its citizens shall be a knowledge of the language, history and nature of the government of the United States, and to prohibit anything which may interfere with such education."

It is apparent that this case includes appropriate language which sustains the defendants' contention that the statutes here involved are not arbitrary, unreasonable, or an invalid attempt to exercise the police power of the state.

The plaintiffs cite Meyer v. State, 107 Neb. 657, 187 N. W. 100, where it was held: "The statute (Laws 1919, ch. 249) prohibiting the teaching of foreign languages in

schools to children before they have passed the eighth grade, held, a reasonable exercise of the police power of the state." In this action the defendant Meyer was charged with the violation of chapter 249, Laws 1919, commonly known as the Siman language law. He was found guilty and fined $25. From such judgment he appealed to this court where the judgment of the trial court was affirmed. Appeal was taken to the Supreme Court of the United States.

In Meyer v. State of Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042, 29 A. L. R. 1446, it was held that forbidding the teaching in school of any other than the English language until the pupil has passed the eighth grade violates the guaranty of liberty in the Fourteenth Amendment to the federal Constitution, in the absence of sudden emergency rendering knowledge of the foreign language clearly harmful. The court further said: "The power of the State to compel attendance at some school and to make reasonable regulations for all schools, including a requirement that they shall give instructions in English, is not questioned." In other words, the Supreme Court of the United States reversed this court's holding in Meyer v. State, *supra.*

The plaintiffs cite Pierce v. Society of Sisters, 268 U. S. 510, 45 S. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468. The Oregon Compulsory Education Act required every parent, guardian, or other person having control or charge or custody of a child between 8 and 16 years of age to send him to a public school for the period of time a public school should be held during the current year in the district where the child resided, and failure to do so was declared a misdemeanor. The manifest purpose was to compel general attendance at public schools by normal children between the ages of 8 and 16 years who had not completed the eighth grade. The Society of Sisters was an Oregon corporation with the power to care for orphans, educate and instruct the youth, and establish and maintain academies and schools. It had

long devoted its property and efforts to the secular and religious education and care of children, and had acquired valuable good will of many parents and guardians.  In its primary schools many children between 8 and 16 years of age were taught the subjects usually pursued in Oregon public schools during the first 8 years. Systematic religious instruction and moral training according to the tenets of the Roman Catholic Church were also regularly provided.  The Society alleged that the enactment of the Compulsory Education Act conflicted with the right of parents to choose schools where their children would receive appropriate mental and religious training, the right of the child to influence the parents' choice of a school, and the right of schools and teachers therein to engage in a useful business or profession, and was accordingly repugnant to the Constitution and void.  No question was raised concerning the power of the state reasonably to regulate all schools, to inspect, supervise, and examine them, their teachers and pupils, to require that all children of proper age attend some school, that teachers should be of good moral character and patriotic disposition, that certain studies plainly essential to good citizenship must be taught, and that nothing be taught which was manifestly inimical to the public welfare.  The United States Supreme Court ruled on the statute to abolish all schools other than public schools.  This is not true in the State of Nebraska, and this case has little bearing on the questions involved in the instant case.  It is noted that the language used in the above case relating to the right of the state to inspect and supervise all schools and to provide for the qualifications of teachers indicates clearly that such language corresponds to the statutes set forth above in the instant case.

The plaintiffs cite State ex rel. Chalfin v. Glick, 172 Ohio St. 249, 175 N. E. 2d 68, a decision of the Supreme Court of Ohio which preceded the decision by the Court of Appeals of Ohio which appears in 177 N. E. 2d 293.

We will take up the latter case first. In such case the relators, for their cause of action against the respondents, stated that the respondents, in their respective capacities as school authorities, teachers, and parents, were in charge of and responsible for the operation of private schools for the education of children of compulsory school age whose parents were of the Mennonite or Old Order of Amish faith; and that they failed, neglected, and refused to provide instruction to the youth of their county attending such schools of the kind, amount, for the length of time, both as to school year and age of pupils, of the character of instruction in accordance with the minimum standards of education required by the laws of Ohio and the regulations of the board of education of the State of Ohio pursuant thereto and refused to permit the children to attend the public schools of the district. The court said: "The first and controlling question for determination by the court is whether upon the state of facts revealed by the record a court of equity has jurisdiction to enjoin the respondents from continuing to operate the schools complained of and to send their children of compulsory school age to such schools. The basis for relator's claim for equitable relief by way of injunction, is that the respondents are maintaining a public nuisance for which there is no adequate remedy at law. * * * The legal right of the respondents to operate a nontax supported private school is not and can not be questioned, nor can it be questioned that the Constitution protects the respondents in their right to worship God according to the dictates of their own conscience and to teach in their church and in their schools the tenets of their faith. To constitute a nuisance, either public or private, the thing or act complained of as constituting a nuisance must either cause injury to the property of another, obstruct the reasonable use or enjoyment of his property or cause physical discomfort to him. * * * It is difficult to see how the operation of the nontax supported Amish

school or the attendance of the children of that faith in such school can in any way cause injury to the public nor can it be said the operation of such school injuriously affects the health, safety or morals of the public or works any injury to the public. * * * The violation of law in the instant case, if any, is not the *operation of the schools* under attack, nor in the *subjects taught* therein, nor the attendance of the children of respondents at *such school,* but the failure of the respondent parents to send their children to a school which *meets the standards of education* required by the compulsory education laws of the state. In a proper action this failure by the parents subjects them to the penalties provided for violation of the compulsory education and attendance laws of the state. * * * This decision is limited to the precise question of the jurisdiction of a court of equity to grant relief upon the record presented. This decision should not be construed in any way as upholding the right of the respondent parents to refuse to send their children to a school which meets the compulsory educational laws of the state, or as relieving them from compliance with such laws." The court held: "Injunction will not lie to prohibit an alleged violation of law by parents who fail to send their children to a school which meets the minimum standards of education required by law."

The case simply held that the wrong remedy was pursued. The Supreme Court of Ohio affirmed the decision of the Court of Appeals. The Supreme Court held that a refusal to enjoin the operation of the schools did not amount to an abuse of discretion since no statutory authority for an injunction was found.

What the defendants contend for in the instant action is that they do not deny that the plaintiffs may tutor their children, nor deny the right of the parents of such children to send them to a school for religious training. What the defendants do deny is the right of the parents to tutor their children in lieu of sending them to school,

and also deny the right of parents to send their children to a school operated by an unqualified teacher in lieu of sending them to a proper school. As indicated by the statutes heretofore set out, they are clear concerning the qualifications necessary to teach the children in the State of Nebraska in any school, be it parochial, denominational, private, or public.

The authorities cited by the plaintiffs have to do primarily with the teaching of foreign language in parochial, private, or denominational schools. It is true that the authorities cited by the plaintiffs do hold that such teaching, under certain circumstances, is unconstitutional. However, in the instant case we are primarily concerned with the qualifications of a teacher employed to teach in the alleged school provided for by the plaintiffs. It is obvious that no attempt was made by the plaintiffs to employ a teacher meeting the qualifications prescribed by statute to teach in any school in this state. The amended petition does not allege that the teacher proposed to be hired by the plaintiffs has ever made application for a certificate to teach in this state.

As we view the statutes here involved, there is nothing arbitrary, unreasonable, or unconstitutional relating to the qualifications of teachers to teach in the parochial, denominational, private, or public schools of this state or with the requirements of compulsory education and attendance at such schools. Parochial, denominational, and private schools in this state have met the requirements of the statutes and have abided by them.

This brings us to certain cases cited by the defendants.

In Commonwealth v. Beiler, 168 Pa. Super. 462, 79 A. 2d 134, the public school code of March 10, 1949, required every parent of any child of compulsory school age to send such child to a day school in which the subjects prescribed by the State Council of Education were taught. It was held that such requirements did not violate the provisions of the state and federal Constitu-

tions guaranteeing freedom of religion, as applied to members of the Old Order Amish Church. Defendants were convicted for violating the compulsory attendance provisions of the public school code. The court said: "We analyzed this question in Com. ex rel. v. Bey, 166 Pa. Superior Ct. 136, 140, 70 A. 2d 693, where, after reviewing numerous cases, we held: 'In short, parents have no constitutional right to deprive their children of the blessings of education or prevent the state from assuring children adequate preparation for the independent and intelligent exercise of their privileges and obligations as citizens in a free democracy.' To that conclusion we adhere. Its major premise is that there is no interference with religious liberty where the State reasonably restricts parental control, or compels parents to perform their natural and civic obligations to educate their children. They may be educated in the public schools, in private or denominational schools, or by approved tutors; but educated they must be within the age limits and in the subjects prescribed by law. The life of the Commonwealth—its safety, its integrity, its independence, its progress,—and the preservation and enhancement of the democratic way of life, depend upon the enlightened intelligence of its citizens. Teachers' Tenure Act Cases, 329 Pa. 213, 197 A. 344. These fundamental objectives are paramount, and they do not collide with the principles of religious or civil liberty. Unless democracy lives religious liberty cannot survive."

In the case of Commonwealth ex rel. School District of Pittsburgh v. Bey, 166 Pa. Super. 136, 70 A. 2d 693, the appellants, husband and wife, were convicted in a summary proceeding before an alderman and on appeal in the court below of violating the compulsory attendance provisions of the school code. The statute required every parent of any child or children of compulsory school age, between the ages of 8 and 17 years, to send such child or children to a day school, and that such child or children should attend such school continuously

through the entire term, provided, that the certificate of any principal or teacher of a private school, or of any institution for the education of children setting forth that the work of said school was in compliance with the provisions of the act, should be sufficient and satisfactory evidence thereof. Regular daily instruction by a properly qualified private tutor should be considered as complying with the provisions of the section if such instruction was satisfactory to the proper county or district superintendent of schools. The court said: "It will be observed that the requirement of compulsory attendance can be satisfied in a 'day school' which may be a public school, 'a private school,' or an 'institution for the instruction of children.' The last two classifications include parochial or denominational schools. Daily instruction by an approved private tutor will also satisfy the statute. * * * '* * * Education is to-day regarded as one of the bulwarks of democratic government. Democracy depends for its very existence upon the enlightened intelligence of its citizens and electors.' * * * 'But the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. * * * And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, *the state as parens patriae may restrict the parent's control by requiring school attendance,* * * *.' " It was further said: "* * * parents have no constitutional right to deprive their children of the blessings of education or prevent the state from assuring children adequate preparation for the independent and intelligent exercise of their privileges and obligations as citizens in a free democracy." See, also, Prince v. Commonwealth of Massachusetts, 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645.

In the case of State v. Hoyt, 84 N. H. 38, 146 A. 170, it was said: "Prohibition of teaching the German language to children under fourteen, unless they have completed eighth-grade work, was declared to be an in-

fringement of the guaranty of liberty found in the fourteenth amendment to the constitution of the United States. Myer v. Nebraska, 262 U. S. 390; Bartels v. Iowa, 262 U. S. 404, * * *. A statute requiring all children to attend the public school was declared invalid for a like reason. Pierce v. Society, 268 U. S. 510." In these cases the state charged some parents for failure to send their children to a public or private school as required by state law. The parents appealed their conviction upon the grounds that they had a private tutor and that that should satisfy the requirements of the state statutes. The Supreme Court affirmed the conviction of the parents, and reviewed the decisions of Pierce v. Society of Sisters, *supra*, which said that private and parochial schools could not be outlawed, and the case of Meyer v. State of Nebraska, *supra*, which said that a ban on foreign language teaching was not reasonable. The court further said: "While these decisions declare the existence of important restrictions upon state power to compel education, there is nothing in them to indicate that the provisions of our statute offend against the federal guaranty of liberty. Under the interpretation of the guaranty, so far as it has been declared, it appears that attendance at some school may still be required, and that the state may supervise the school attended. The power to supervise necessarily involves the power to reject the unfit, and to make it obligatory to submit to supervision. The local statute does not go beyond these requirements. * * * The state being entitled to supervise education, it is not an answer to a charge of failure to furnish supervised instruction to show that equivalent unsupervised instruction is given. Unless the idea of personal liberty in the matter of educating children, recently developed in the federal decisions, is to be carried to the extreme of saying that the sole obligation that can be imposed upon the parent is to educate, a provision that approval of the parent's method must be obtained by him is not invalid."

.. The case of People v. Turner, 121 Cal. App. 2d 861, 263 P. 2d 685, concerned the conviction of adults for failure to send three children to public school. The California Supreme Court affirmed the conviction and decided that the state's compulsory education law did not. unconstitutionally deprive parents of the right to determine how and where their children should be educated. The California statute provides that a tutor may be hired to teach children at least 3 hours a day, between the hours of 8 a.m. and 4 p.m., for 170 days each calendar year. The tutor, however, must hold a valid state teaching credential for the grade actually being taught. The court pointed out that at the time of its decision only 11 of 48 states permitted home instruction by parents or tutors and that except in two states the home instruction was specifically regulated in areas such as qualifications of the tutor and hours instructed.

In the instant case the right to send a child to a private school is not in dispute.

The above-cited statutes set up a standard for a good education. They allow churches and private groups to establish schools on the same basis. They require each child to be exposed to a school a certain number of months. Private and parochial schools are a part of the educational system of this state.

None of the cited cases disclose any statutes similar to those here involved to be arbitrary, unreasonable, or unconstitutional.

The right of religious freedom is not involved in this case. The defendants do not deny these plaintiffs have the right to worship God as their consciences dictate as provided for under the Constitutions of the United States and of this state. What the defendants insist upon is a qualified teacher under reasonable statutes providing for such qualifications to teach school. The statutes complained of by the plaintiffs are not arbitrary or unreasonable nor an invalid attempt to exercise the police power of the State, nor are the regula-

tions governing the approval and accreditation of Nebraska nonpublic schools issued by the Nebraska Department of Education.

From a review of the statutes here involved and the authorities relating to this subject matter, we conclude that the judgment of the trial court sustaining the defendants' demurrer should be, and is hereby, affirmed.

AFFIRMED.