## Commonwealth v. Hall

*Richard C. Snelbaker, Assistant District Attorney,* for Commonwealth.
*Thomas W. Scott,* for defendants.

SHEELY, *J.,* March 23, 1981—Defendants, John P. and Sherrie Hall, are the parents of four school-age children who were enrolled in the Cumberland Valley School District (District) schools for the 1979-1980 school year. The four children were absent and unexcused from school on January 3, 1980, as the result of an extended Christmas vacation, and on February 22 and 25, 1980, as a result of a family trip to New England. Defendants were notified of the childrens' three unexcused absences in accordance with Section 1333 of the Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. § 13-1333 (School Code).

On March 10, 1980, the children were absent as a result of a family trip to Washington, D.C. This absence was excused by the District pursuant to its educational trip policy. The district's policy provides as follows:

"A student will be permitted to take one *educational trip per school year, not to exceed five (5) school days,* with his/her parents/guardian and receive an excused absence provided parents/ guardian comply with program requirements. When an educational trip is planned which will require a student to be absent from school, an Educational Trip Form should be completed and returned to the office one week prior to the trip. Ne-

glecting to gain prior approval for the educational trip will result in the recording of unexcused daily absences for those days absent." (Emphasis supplied.)

Thereafter defendants requested that the children be given three more excused absences under the district's educational trip policy. The request was denied because of the childrens' previous educational trip. Nevertheless, defendants took the children from school on March 31, April 1 and 2, 1980, because of a family trip to Europe. Consequently, defendants were charged with violating the compulsory school attendance law set forth at Section 13-1333 of the School Code. Defendants were convicted of the summary offense and appealed to this court for a hearing de novo. At the hearing, defendants asserted that the district's educational trip policy violates the School Code as interpreted by the State Board of Education (State Board), and that it violates the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution, U.S. Const., Amend. XIV.

Our role in this case is made clear in Zebra v. Pittsburgh School District, 449 Pa. 432, 437, 296 A. 2d 748, 750 (1972):

"Courts are further restrained, when dealing with matters of school policy, by the long-established and salutary rule that the courts should not function as super school boards. We will not interfere with the discretionary exercise of a school board's power unless the action was based on 'a misconception of law, ignorance through lack of inquiry into the facts necessary to form an intelligent judgment, or the result of arbitrary will or

caprice.' " (Quoting Hibbs v. Arensberg, 276 Pa. 24, 119 A. 2d 727 (1923) ).

Defendants do not challenge the School Code or its interpretation by the State Board's regulation. We are therefore constrained to determining whether the district's policy is arbitrary, capricious, unlawful or unconstitutional.

Art. III, § 14 of the Pennsylvania Constitution requires the General Assembly to "provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." The underlying purpose of this section, obviously, is to provide a better education for the children of this Commonwealth: Ehret v. Kulpmont Borough School District, 333 Pa. 518, 5 A. 2d 188 (1939). To meet this Constitutional mandate, the General Assembly enacted the School Code. Danson v. Casey, 33 Pa. Commw. 614, 382 A. 2d 1238, aff'd 484 Pa. 415, 399 A. 2d 360 (1978).

The School Code sets forth the compulsory attendance law at Section 13-1327. It states that, "Every child of compulsory school age having a legal residence in this Commonwealth . . . is required to attend a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language." It further requires, "Every parent, guardian, or other person having control or charge of any child or children of compulsory school age . . . to send such child or children to a day school in which the subjects and activities prescribed by the standards of the State Board of Education are taught in the English language." In addition, the School Code requires a minumum 180 days of instruction to school age children at Section 15-1501 in the particular courses established by Section 15-1512 of the School Code. Exceptions to

the compulsory attendance law and alternate education programs are set forth in the School Code, but do not apply to this case. Section 13-1333 provides for penalties for parents who fail to comply with the compulsory education law. The School Code, in carrying out the purpose of providing better education for citizens of the Commonwealth, makes no exception to compulsory attendance for educational trips.

To the State Board is delegated the function of adopting "broad policies and principles and [establishing] standards governing the educational program of the Commonwealth." 22 Pa. Code § 102. As part of its function, the State Board has promulgated a regulation which requires 180 days of instruction with a minimum number of hours of instruction: 22 Pa. Code § 11.3. The State Board's regulation concerning nonschool sponsored educational trips states that:

"Upon receipt of a written request from the parents of the pupils involved, *pupils may be excused from school attendance to participate in an educational tour or trip* provided during the school term at expense of the parents when such tour or trip is so evaluated by the District Superintendent and pupil participants therein are subject to direction and supervision by an adult personage acceptable to the District Superintendent and to the parents of the pupils concerned."

Since the State Board's regulation is not challenged on the basis that it is an improper delegation of power or on any other grounds, we assume that it is valid. Only the district's policy is under attack.

The legislature has delegated the administration of its constitutional duty of maintaining a thorough and efficient public school system to the school

districts: Pittsburgh School District v. Allegheny County, 347 Pa. 101, 31 A. 2d 707 (1943). As an agency of the legislature, the school district possesses only the administrative powers expressly granted or necessarily implied from the statutes: Wilson v. Philadelphia School District, 328 Pa. 225, 195 Atl. 90 (1937). In reviewing the district's educational trip policy, we note initially that it is not contrary to the School Code, which requires compulsory attendance, nor is it contrary to the State Board's regulation. In fact, it falls squarely within the State Board's regulation.

First, the State Board permits but does not mandate that a school district excuse absences for educational trips. Second, the regulation clearly provides that if a school district wishes to, it *may,* excuse absences for *an* educational trip. The district's policy of excusing absences for one educational trip adopts the terms of the State Board's regulation. While the State Board does not establish the number of excused absences which may be granted for one permissible educational trip, the District limits the excused absences for one educational trip to five days. Such a limitation is properly within the district's discretion since the district is given the power to administer the School Code, which requires compulsory attendance and a minimum of 180 days instruction in specified courses. Furthermore, the obvious purpose of the policy is to limit the amount of time and effort that school officials must spend in reviewing requests for excused absences, so as to maximize the time they spend in administering the educational program. This permits the district to administer a thorough and efficient public school system as is required by the legislature, and can hardly be said to be arbitrary or capricious.

The fact that the district permits more than one school sponsored educational trip, but only one nonschool sponsored educational trip does not lead to a conclusion that the district's policy is arbitrary. School trips are simply part and parcel of the school curriculum. Parent sponsored trips are not. Indeed, they may be totally irrelevant to the curriculum. Such a distinction supports the district's policy of excusing students for only one nonschool educational trip.

The question remaining to be answered is whether the District's policy is unconstitutional. It is clear that the state cannot require school age children to attend public schools, as such a requirement interferes with parents' or guardians' freedom to educate and raise their children: Pierce, Governor of Oregon v. Society of Sisters, 268 U.S. 510 (1925). However, the state has the power to require that children be educated, and may thereby restrict or regulate the parents' natural right to control their children: Com. ex rel School District of Pittsburgh v. Bey, 166 Pa. Super. 136, 140, 70 A. 2d 693, 695 (1950). In upholding the constitutionality of the state statute requiring compulsory attendance, the Superior Court stated: "In short, parents have no constitutional right to deprive their children of the blessings of education or prevent the state from assuring children adequate preparation for the independent and intelligent exercise of their privileges and obligations as citizens in a free democracy."

Defendants concede that the state has a compelling interest in providing education for the state's school age children. In fact, the United States Supreme Court has stated that "education is perhaps the most important function of state and local governments." Brown v. Board of Educational of To-

peka, 347 U.S. 483, 493 (1954). It is clear that the District's policy of limiting excused absences for educational trips is created to effectuate the compulsory education law. Since the District's rule advances a legitimate compelling state interest, i.e., compulsory education, and since the District's rule is narrowly drawn to express only the legitimate state interest at stake, i.e., compulsory education, state requlation of the parents' rights is appropriate. See, e.g., Roe v. Wade, 410 U.S. 113 (1973). Defendants' equal protection argument must fail.

Defendants have also raised a due process argument, claiming that the district created an arbitrary and irrational classification in establishing its policy. It cannot be argued with a straight face that the district's policy which establishes a one trip, five day limit on excused absences has no rational relationship to the responsibility with which the district is charged, that of educating students and enforcing the School Code's compulsory attendance laws.

## ORDER OF COURT

And now, this March 23, 1981, in accordance with the opinion filed this date, defendants are found guilty of four counts of truancy and are directed to pay a fine of $2 for each child and the costs of prosecution.

Defendants are hereby directed to appear for sentence on Tuesday, March 31, 1981, at 9:30 am, unless prior thereto they shall have paid the fine and all accrued costs through the Probation Office.