CAROLENE PRODUCTS COMPANY, APPELLEE, V. WILLIAM BANNING ET AL., APPELLANTS.

FILED JULY 8, 1936. No. 29759.

*William H. Wright, Attorney General, Paul P. Chaney, William C. Ramsey* and *Lester A. Danielson,* for appellants.

*George N. Murdock* and *Bernard R. Stone, contra.*

*Crossman, Munger & Barton* and *Varro H. Rhodes, amici curiæ.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and CARTER, JJ., and YEAGER, District Judge.

CARTER, J.

This action was commenced by the plaintiff to secure an injunction to restrain defendants from enforcing section 81-1022, Comp. St. 1929, known as the "filled milk" statute, for the reason that it is unconstitutional and void. From a decree awarding an injunction, defendants appeal.

Section 81-1022, Comp. St. 1929, provides as follows: "It shall be unlawful for any person, firm, or corporation, by himself, his servant or agent, or as the servant or agent of another, to manufacture, sell or exchange, or have in possession with intent to sell or exchange, any milk, cream, skim milk, buttermilk, condensed or evaporated milk, powdered milk, condensed skim milk, or any of the fluid derivatives of any of them, to which has been added any fat or oil other than milk fat, either under the name of said products or articles or the derivatives thereof or under any fictitious or trade-name whatsoever."

Section 81-1024, Comp. St. 1929, provides that a violation of any of the provisions of the act shall constitute a misdemeanor punishable by fine, jail sentence, or both.

The record discloses that plaintiff is a sales company selling filled milk manufactured by the Litchfield Creamery Company of Litchfield, Illinois, such compounds being known as "Carolene" and "Milnut." The testimony shows that these two products were manufactured in the same manner and contained the same ingredients. They were manufactured by taking sweet milk from which substantially all the butterfat had been removed by the ordinary process of separation, evaporating the moisture content thereof until approximately 18 per cent. skim milk solids

remain, and then adding approximately 6 per cent. cocoanut oil. This product was packed and sold in air-tight tin cans bearing Carolene or Milnut labels. On the Carolene label the following is printed: "Carolene net weight 14½ ounces. 'So rich it whips.' A compound of refined nut oils & evaporated skimmed milk. Not less than 18% skim milk solids. Total solids 25½%. Not less than 6% nut oils. Not to be sold for evaporated milk. Carolene. A high-grade wholesome food product, composed of a mixture of: Concentrated skimmed milk and highly refined cocoanut oils. Especially prepared for use in coffee, baking and for other culinary purposes. This product complies in all respects with the Federal Food and Drug Act of June 30, 1906, and is neither adulterated nor misbranded under the provisions thereof. Licensed under patents August 1, 1916, 1193477, October 17, 1922, 1432632, October 17, 1922, 1432633, October 17, 1922, 1432634, October 17, 1922, 1432699. Manufactured for Carolene Products Co., Litchfield, Ill., U. S. A. After the can is opened, under the same conditions of temperature, Carolene will keep sweet longer than either fresh or evaporated canned milks. When whipping, chill first."

The evidence establishes the fact that Carolene was being sold in the city of Omaha and that the defendants, who are officers of the state charged with the duty of enforcing its laws pertaining to the distribution of food products, have prevented and are preventing the sale of this product in the city of Omaha and elsewhere in the state by virtue of section 81-1022, Comp. St. 1929, and will continue to do so unless restrained by the courts.

Plaintiff contends that this act is null and void for the following reasons: (1) Because said statutes deprive the plaintiff of its property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States, which provides in substance that no state shall make or enforce any law which shall abridge any of the privileges or immunities of the citizens of the United States, nor shall it deprive any person of life,

liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws; and (2) because said statutes are in violation of section 3, art. I of the Constitution of the state of Nebraska, which provides with reference thereto as follows: "No person shall be deprived of life, liberty, or property without due process of law."

A great amount of evidence was taken in this case on the question whether Carolene was a deleterious food product. We will not burden this opinion with a discussion of the evidence but will content ourselves with a statement of the conclusions we have drawn therefrom. The evidence establishes that Carolene is similar in taste, appearance, consistency and manner of packing to evaporated or condensed milk. The cocoanut oil added to the skim milk to take the place of the extracted butterfat is much less expensive than butterfat. Carolene can therefore be sold, and is sold, to jobbers and retailers cheaper than the evaporated or condensed milk. The compound is not delterious in itself but it does not have the same quality or food value as the genuine condensed milk. The evidence of expert witnesses was to the effect that it is lacking in a certain chemical substance known as vitamin A, which is an essential element of a proper dietary. This vitamin may be supplied from other foods. It is admitted that Carolene is not a proper substitute for milk or condensed milk for infants and, if used exclusively for long periods of time, will cause a child to suffer harmful effects. The record shows that it was advertised by retailers in Omaha as "milk" and "Carolene compound," and sold at a less price than condensed milk. This compound is labeled to indicate that it was more or less equivalent to or better than the genuine evaporated milk, although the ingredients thereof were truthfully stated on the labels. We conclude therefore that Carolene is a nutritious and healthful food and in no way deleterious to health in its ordinary use. Under these facts, has the legislature exceeded constitutional limits in passing this act?

It must be conceded at the outset that the act was not passed to prevent an adulteration of milk products, as no distinction is made between the addition of harmless and harmful oils and fats. Its purpose must therefore be the prevention of fraud upon the public through the sale of filled milk as natural milk or its derivatives, whether sold under its true name or under a trade-name.

The legislature, under the policy power, can regulate the production and sale of milk and its derivatives. The power to regulate does not, however, include the power to prohibit the sale of useful and harmless articles of commerce. In order that a statute may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety, morals or general welfare; that there is some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof; and that the latter do in some plain, appreciable and appropriate manner tend toward the accomplishment of the object for which the power is exercised. 12 C. J. 929.

It is the duty of the legislature, of course, to use its judgment in exercising the police power of the state. The presumption is that any such law enacted by it is constitutional, and it is only when the courts determine that an enacted law invades personal and property rights protected by the Constitution that it will not be sustained. The question to be determined herein is whether the act in question does invade constitutional rights. Is the remedy for the alleged wrong unreasonable and arbitrary?

It is the contention of the state that Carolene is harmful to public health because it is lacking in vitamin A. It is not contended that it is harmful because it contains harmful ingredients that are deleterious to public health. Many common foods are lacking in vitamin A. Skim milk contains little or no vitamin A. Cocoanut oil is also practically devoid of vitamin A. It is not, however, unlawful to sell either by itself but is a misdemeanor to mix them together

for sale purposes if the statute before us is valid. It must be borne in mind, however, that the act is not limited to a mixture of vegetable oils and fats with skim milk. The act includes whole milk and cream which are rich in vitamin A, as well as skim milk which lacks it. Under this act, skim milk and its derivatives may be sold even though they contain no vitamin A. On the other hand, skim milk and its derivatives, to which have been added cocoanut oil, the combination of which contains no vitamin A, cannot be sold even though no ingredient deleterious to health was added. Such a statute appears to be unreasonable and arbitrary.

In the very recent case of *Carolene Products Co. v. Thomson*, 267 N. W. (Mich.) 608, the court said: "Prohibition of manufacture and sale of a nutritious food product which is harmless to public health cannot be justified under the police power to preserve public health, because the remedy has no reasonable relation to the purpose unless, at least, it appears that other similar products, dangerous to health, are on the market and that prohibition of all is reasonably necessary to protect the public health because of the impracticability of separating the good from the bad. * * * Extended to other trade, it would enable the legislature to ban many common articles of commerce, such, for example, as syrup not all maple, shoes not all leather, clothes or comfortables with shoddy in them (*Weaver v. Palmer Bros. Co.*, 270 U. S. 402), and the like. * * * We must find and declare, therefore, that the statute is in violation of the constitutional right to do business, secured under the due process clause of the Fourteenth Amendment of the United States Constitution and article II, section 16 of our state Constitution."

In *Weaver v. Palmer Bros. Co.*, 270 U. S. 402, which involved the validity of a statute prohibiting the use of shoddy in the manufacture of bedding, the court said: "Shoddy-filled comfortables made by appellee are useful articles for which there is much demand. And it is a matter of public concern that the production and sale of things necessary

or convenient for use should not be forbidden. They are to be distinguished from things that the state is deemed to have power to suppress as inherently dangerous."

A citizen clearly has the right to engage in any occupation not detrimental to the public health, safety and welfare. Measures adopted by the legislature to protect the public health and secure the public safety and welfare must have some relation to those proposed ends. If it is apparent that the statute, under the guise of a police regulation, does not tend to preserve the public health, safety or welfare, it is unconstitutional as an invasion of the property rights of the individual.

In *People v. Carolene Products Co.*, 345 Ill. 166, 177 N. E. 698, the court said: "The legislature has no authority to pronounce the performance of an innocent act criminal when the public health, safety, comfort or welfare is not interfered with (*Gillespie v. People*, 188 Ill. 176), and may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. *New State Ice Co. v. Liebmann*, 42 Fed. (2d) 913. No question of imitation or fraud is involved in this case and the wholesomeness of Carolene is admitted. In *People v. Price*, 257 Ill. 587, this court said: 'It may be conceded the legislature has no authority to forbid the sale of a known wholesome article of food.'"

Appellants rely upon the case of *State v. Emery*, 178 Wis. 147, 189 N. W. 564, in which the Wisconsin court, in holding a similar act constitutional, said that, where "there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind," and that "the court cannot try the legislature and reverse its decision as to the facts." Subsequently, in the later case of *John F. Jelke Co. v. Emery*, 193 Wis. 311, 214 N. W. 369, the court said: "It prohibits the carrying on of a legitimate, profitable industry and the sale of a healthful, nutritious food. This prohibition can only be justified upon the ground that it is

necessary in order to protect the public health, public morals, public safety, prevent fraud, or promote the public welfare. As already indicated, the public health is not endangered by the manufacture and sale of oleomargarine, and certainly no question of morals is involved. * * * Under the facts proved in this case, whatever the economics of the situation may be, from the standpoint of constitutional right the legislature has no more power to prohibit the manufacture and sale of oleomargarine in aid of the dairy industry than it would have to prohibit the raising of sheep in aid of the beef-cattle industry or to prohibit the manufacture and sale of cement for the benefit of the lumber industry. In some cases a proper exercise of the police power results in advantage to a particular class of citizens and to the disadvantage of others. When that is the principal purpose of the measure, courts will look behind even the declared intent of legislatures, and relieve citizens against oppressive acts where the primary purpose is not to the protection of the public health, safety, or morals. *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. Rep. 1064, 30 L. Ed. 220, and cases cited in notes, p. 541." It therefore appears that the former rule announced in *State v. Emery, supra,* is not approved by the later decisions of the Wisconsin court.

Appellants also rely on *Hebe Co. v. Shaw,* 248 U. S. 297, in which an Ohio statute was upheld that barred the sale of Hebe, a compound of evaporated skim milk and vegetable oil. This case was commented upon by the Michigan court in *Carolene Products Co. v. Thomson, supra,* as follows:

"Its resemblance to this case is quite superficial. It involved a similar milk product, skim milk and oil, but the court declared the oil was of no consequence. It construed the Ohio statute as prohibiting the sale of condensed skim milk in any form, not merely when mixed with oil. It held the act valid, as against the federal Constitution, on the ground that it established a standard of nutritive elements for milk and it was designed to save the public from 'fraudulent substitution of an inferior product that

would be hard to detect.' The court did not indicate the possibilities of fraud nor the possible ineffectiveness of regulation to conserve the public good.

"Its distinctions from this case are apparent. The Ohio act, as construed, established a standard of milk for sale, wholly outlawed an inferior grade of milk but only in manufactured or processed form—condensed skim milk. Our statute is much broader. It established no standard of milk, does not purport to outlaw any kind of milk because it is inferior, is not concerned with whether the product is in manufactured or natural form, but prohibits the sale of any kind of milk, whole or skimmed, and of any milk products whether in natural, manufactured or processed form, and although their sale is otherwise permitted by law, on the single contingency of added foreign oils also legally salable. With such fundamental differences in the acts, the *Hebe* case should not be accepted as controlling because of superficial likenesses."

We are in accord with this view and concur with the holding of the Michigan court that the *Hebe* case is not controlling in the case at bar.

The contention is made that the prohibition of the sale of Carolene and like products should be upheld under the police power because it would prevent the perpetration of fraud on the public. The evidence shows that in a few cases retail grocers kept Carolene on the same shelf with condensed milk, that a few exhibited Carolene to customers who asked for milk or evaporated milk, and some retailers advertised Carolene as milk. We cannot say that a few instances of deception on the part of retailers are sufficient to give authority to the legislature under the police power to prohibit the sale of a product. To so hold would give the legislature power to prohibit the sale of any article on the market, as all are subject to the possibility of being misrepresented. If retailers of a wholesome and nutritious food product practice deception in its sale, the remedy is by regulation and not by a destruction of the business. After a consideration of all the evidence, we fail to find

that the possibilities of fraud are such as would sustain the exercise of the police power of the state in prohibiting the sale of Carolene. The evils of which the state complains can undoubtedly be avoided by reasonable legislative regulation. The fixing of uniform standards in the sale of milk products will provide ample protection for the public. The legislature has the power to prohibit the sale of food products that are dangerous or poisonous but it cannot prohibit the sale of a wholesome and nutritious food product.

We are therefore obliged to hold that section 81-1022, Comp. St. 1929, is unreasonable and arbitrary and violative of the Fourteenth Amendment of the United States Constitution and of section 3, art. I of the Constitution of Nebraska.

The judgment of the trial court will therefore be

AFFIRMED.