STATE OF NEBRASKA, APPELLEE, v. ROBERT A. KELLS, APPELLANT.

259 N. W. 2d 19

Filed November 2, 1977. No. 41299.

Kirk E. Naylor, Jr., and Dennis R. Keefe of Naylor & Keefe, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

Defendant was found guilty in the county court of Lancaster County of the offense of possession of marijuana weighing less than 1 pound in violation of section 28-4,125 (4), R. R. S. 1943. A fine of $300 was imposed in the county court. Upon appeal to the District Court the conviction was affirmed, but the fine was reduced to the sum of $50. On appeal to this court the defendant urges that the county court and District Court erred in rejecting the defendant's contention that section 28-4,125 (4), R. R. S. 1943, is unconstitutional and therefore also erred in overruling his motion to dismiss the complaint against him. We affirm.

In the county court the issues were tried upon a stipulation of facts and the testimony of an expert witness called by the defendant. In the District Court the record of the trial in the county court was offered and received in evidence and constitutes the bill of exceptions before us. That record shows that it was stipulated by the defendant and the State that on September 16, 1975, a quantity of marijuana, less than 1 pound, was found in the possession of the defendant in his home in Lancaster County, Nebraska; that the possession of this controlled substance by the defendant was for his own personal use in his home and was not possessed by him with the intent

to distribute or to sell; and that he was more than 19 years of age at the time.

The expert witness called by the defendant stated his opinion as to the psychological, physiological, and sociological effects of the use of marijuana. Received in evidence in connection with the opinion were certain studies and reports as follows: (1) Marihuana: A Signal of Misunderstanding, First Report of the National Commission on Marihuana and Drug Abuse, 1972; (2) Drug Use in America: Problem in Perspective, Second Report of the National Commission on Marihuana and Drug Abuse, 1973; and (3) Ganja in Jamaica, by Vera Rubin and Lambros Comitas, 1975. The witness classified marijuana as a psychoactive drug, that is, one capable of altering human mental states. The ultimate gist of this expert's opinion was that the effects produced by the "normal use," or "dosage," which he failed to define, of marijuana was not psychologically, physiologically, or sociologically harmful. He further rendered his opinion that marijuana use has certain beneficial effects, e.g., "A. Strengthened family ties, social ties, decreased aggression and violence, decreased consumption of numerous other drugs such as alcohol, barbiturates, phencycladine, cocaine and amphetamine, and of course indirect effects of such effects. . . . In my opinion the consumption of marijuana, the normal consumption of marijuana generally decreases the amount of a variety of other drugs such as alcohol, barbiturates, cocaine, amphetamine, phencycladine. . . . It is my opinion that there are not generally accepted long-term effects. It is my firm opinion that none have been demonstrated of any significance. . . . Yes, marijuana usage characteristically decreases aggressive behavior and its tendencies. There are extensive numerous indications of that in every one of these studies, not including the last one."

He denied knowledge of any studies which might

indicate the existence of a dispute concerning the possible harmful effects from the use of marijuana. He did agree that the physiological, psychological, and sociological effects of the use of marijuana might vary widely from individual to individual. He stated that his opinion was based upon the following: "A. That opinion is based upon extensive experience in counselling, interviewing, data collecting, reading of the literature, attending conventions, discussions, and research with colleagues, in other words every possible form of foundation that I can think of right now. . . . Yes, naturalistic observation is a fundamental first step in scientific procedure. This contrasts with experimental research in that the variables in that actually are manipulated. For example, I do not actually administer marijuana. That would be experimental. Administering marijuana and perhaps observing its effects. Experiments are based upon in many cases naturalistic observations. Naturalistic observations include formats for collecting certain kinds of information on the phenomenon of interest as it actually happens without the experimenter making it happen." He also founded his opinion upon information contained in the publications described earlier in this opinion and which he described as the only authoritative ones.

Section 28-4,125 (4), R. R. S. 1943, is a part of the Uniform Controlled Substances Act and makes it unlawful and a misdemeanor to possess marijuana weighing 1 pound or less. The maximum penalty for such possession is a fine of not more than $500, or imprisonment in the county jail for not more than 7 days, with confinement to be separate and apart from other prisoners, or both such fine and imprisonment. Marijuana is classified by the act as an hallucinogenic substance. § 28-4,117, Schedule I (c) (11), R. R. S. 1943.

To support his contention of unconstitutionality,

the defendant makes two arguments: (1) The enforcement of section 28-4,125 (4), R. R. S. 1943, against an adult person who possesses marijuana for personal use in his own home, is a violation of that person's fundamental right to privacy claimed as guaranteed by the federal and state Constitutions. (2) That such enforcement under the circumstances above violates the due process and equal protection clauses of the state and federal Constitutions.

The substance of the defendant's first argument is that since the record establishes that the act of possession of marijuana in one's own home is harmless, it bears no relationship to any legitimate exercise of the police power of the State, that is, the protection of the public health, safety, or morals. Thus statutorily authorized interference with such activity is a violation of a fundamental right to privacy. He cites and relies upon numerous cases, including Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042; Griswold v. Connecticut, 381 U. S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510; Stanley v. Georgia, 394 U. S. 557, 89 S. Ct. 1243, 22 L. Ed. 2d 542. He contends that where, as is here claimed, there is a significant encroachment on a fundamental personal liberty, the State must show that the prohibition is necessary to serve a compelling State interest rather than merely showing there is some rational relationship between a legitimate State purpose and the prohibition of the conduct in question. Stanley v. Georgia, *supra*; Griswold v. Connecticut, *supra*. He does not contend that the State may not prohibit the public use of marijuana.

He alternatively urges that we adopt the position taken by the Supreme Court of Alaska in Ravin v. State, 537 P. 2d 494, where that court declared the marijuana possession statute of that state unconstitutional on the ground that it constituted an invasion of privacy insofar as it prohibited the private use of marijuana. That court adopted a new test which re-

quired that where the government interferes with the right of privacy, the "relationship between means and ends be not merely reasonable but close and substantial."

The defects in the defendant's factual argument are found in the supporting documentation upon which he relies and which his witness said was authoritative. The first report of the national commission above mentioned had among its purposes the making of recommendations to the policy makers, that is, the Congress and the state legislatures, as to the appropriate social policy to be adopted in handling the "marijuana problem." That report concludes with a recommendation to the Congress that the possession of marijuana for personal use no longer be prohibited, but that possession of marijuana in public be subject to immediate seizure as contraband; and that marijuana intoxication not constitute a defense to any crime, including those requiring a specific intent. Its recommendations to the states goes a bit further. In their case it would also permit distribution of small amounts of marijuana in private for no remuneration, or insignificant remuneration not involving profit. It recommends that absolute liability be imposed upon persons for damages caused while under the intoxicating influence of marijuana. Among the numerous reasons for its recommendations are the excessive costs of enforcement compared with the benefits gained.

Its recommendations for statutory changes are not founded upon a finding that the use of marijuana is a harmless activity. We illustrate with a few quotations from the report, Marihuana: A Signal of Misunderstanding, First Report of the National Commission on Marihuana and Drug Abuse, 1972. "It is wrong to assume, as many have done, that a particular statement of marihuana's effects compels a given social or legal implementation. An accurate

statement of the effects of the drug is obviously an important consideration, but it is conclusive only if the effects are extreme one way or the other. For example, if the use of a particular drug immediately causes the user to murder anyone in his presence, we have no doubt that a vigorous effort to eliminate use of that drug would be in order. On the other hand, if the effects of the drug are purely benign, presenting no danger whatsoever to the user or society, no reason would exist to suppress it.

"We know of no psychoactive substance, including marihuana, which falls at either of these extremes. (p. 23) . . .

"Any psychoactive drug is potentially harmful to the individual, depending on the intensity, frequency and duration of use. Marihuana is no exception. Because the particular hazards of use differ for different drugs, it makes no sense to compare the harmfulness of different drugs. One may compare, insofar as the individual is concerned, only the harmfulness of specific *effects*. Is heroin less harmful than alcohol because, unlike alcohol, it directly causes no physical injury? Or is heroin more harmful than alcohol because at normal doses its use is more incapacitating in a behavioral sense?

"Assessment of the relative dangers of particular drugs is meaningful only in a wider context which weighs the possible benefits of the drugs, the comparative scope of their use, and their relative impact on society at large. (p. 65) . . .

"From what is now known about the effects of marihuana, its use at the present level does not constitute a major threat to public health. However, this statement should not lead to complacency. Marihuana is not an innocuous drug. The clinical findings of impaired psychological function, carefully documented by medical specialists, legitimately arouse concern. These studies identify marihuana-related problems which must be taken

into account in the development of public policy. Unfortunately, these marihuana-related problems, which occur only in heavy, long-term users, have been overgeneralized and overdramatized. (p. 90) . . .

"Social institutional spokesmen now commonly recognize that control of marihuana is only partially a law enforcement problem. Opinions cluster around the propositions that society should not be punitive on the one hand, but should not make the drug available, at least for now. Beyond these points, however, uncertainty prevails. There is no common vision of an appropriate social control policy.

"Each institution is going about the business of control in its own way. Parents emphasize mutual communication. The secondary schools emphasize health education. The colleges recognize personal freedom so long as it does not jeopardize the educational enterprise. Churches emphasize uncertainty about the moral implications of marihuana use. The medical fraternity stresses the need for further research into the health consequences of marihuana use. Uncertainty is the common denominator. (p. 120) . . .

"Society should not approve or encourage the recreational use of *any* drug, in public or private. Any semblance of encouragement enhances the possibility of abuse and removes, from a psychological standpoint, an effective support of individual restraint." (p. 129).

It is clear beyond question that the study, from which we have quoted and which is relied upon by the defendant in part to support his factual position that the private use of marijuana is without dispute innocuous, does not in fact support the position. Even though the defendant's witness gave his opinion that the use of marijuana was harmless, the trier of fact was not bound to accept that opinion. Dobry

v. State, 130 Neb. 51, 263 N. W. 681. See NJI No. 14.55. The quotations from the report and the report itself make the case that marijuana control is a social policy determination. That is a legislative function. The study does not support the position that marijuana use is a harmless activity which the legislatures have no right to prohibit or control and that, therefore, the courts must hold such legislation unconstitutional.

The cases upon which the defendant relies are distinguishable because they involve what have been referred to as "fundamental" rights, for example, Meyer v. Nebraska, *supra*, the right of the parent to have the child taught a particular foreign language; Stanley v. Georgia, *supra*, the first amendment right to be exposed to an idea, even a harmful one; Griswold v. Connecticut, *supra*, marital privacy. The Supreme Court of the United States has not recognized a separate constitutional right of privacy apart from some right recognized in our history and culture as "fundamental" or in connection with a right emanating from some right specifically recognized by the Constitution. Griswold v. Connecticut, *supra* (Goldberg, J., concurring). In Doe v. Commonwealth's Atty. for City of Richmond, 403 F. Supp. 1199, affirmed 425 U. S. 901, 96 S. Ct. 1489, 47 L. Ed. 2d 751, reh. den. 425 U. S. 985, 96 S. Ct. 2192, 48 L. Ed. 2d 810, the provisions of a sodomy statute were not found to violate penumbral rights to privacy, and in Paul v. Davis, 424 U. S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405, that court held reputation rights unprotected by a constitutional right to privacy.

The opinion in the Alaska case of Ravin v. State, *supra*, was founded in large measure on a specific right of privacy found in the Constitution of that state.

Constitutional challenges to legislation prohibiting the use of marijuana on the ground that such legislation violates a right of privacy have been rejected

in cases in which the issue has been raised. NORML v. Guste, 380 F. Supp. 404; Kreisher v. State (Del.), 319 A. 2d 31; State ex rel. Scott v. Conaty (W. Va. App.), 187 S. E. 2d 119; State v. Baker (Hawaii), 535 P. 2d 1394; Laird v. State (Fla.), 342 S. 2d 962; State v. Anderson, 16 Wash. App. 553, 558 P. 2d 307; and others.

Despite the recommendations of the national commission, all states and the federal government, at least up through 1976, still prohibited the use and possession of marijuana. See Marijuana: A Study of State Policies and Penalties, National Governors' Conference, Center for Policy Research and Analysis, Vol. 3, 1977.

The constitutional test which is to be applied in this case is whether the act of the Legislature, in prohibiting the possession of marijuana, can be said to have a rational relationship to some legitimate state purpose. Botsch v. Reisdorff, 193 Neb. 165, 226 N. W. 2d 121. It is within the prerogative of the Legislature to determine whether the possession of marijuana, including possession for personal use, is to be decriminalized.

The courts below were correct in rejecting the defendant's constitutional argument on the grounds of privacy.

The defendant's due process and equal protection arguments are founded essentially upon the contention that the record establishes that marijuana, if harmful, is no more so than alcoholic liquor or tobacco and that since the State only regulates, rather than prohibits, possession in those cases the defendant is denied equal protection and due process rights guaranteed by our Constitutions. This contention does not rest on solid constitutional ground.

When the Legislature makes a determination that the use of a substance or some conduct is harmful and that the use, act, or possession must be prohibited in the public welfare, it is under no constitu-

tional obligation to "cover the waterfront." It may attack different aspects of a problem in different ways, or go about the matter piecemeal. State v. Donovan (Me.), 344 A. 2d 401; State v. O'Bryan, 96 Idaho 548, 531 P. 2d 1193; State v. Leins (Iowa), 234 N. W. 2d 645; People v. Alexander, 56 Mich. App. 400, 223 N. W. 2d 750; United States v. Kiffer, 477 F. 2d 349; United States v. Maiden, 355 F. Supp. 743; Botsch v. Reisdorff, *supra*.

AFFIRMED.