PEGASUS OF OMAHA, INC., A NEBRASKA CORPORATION, APPELLANT, V. STATE OF NEBRASKA ET AL., APPELLEES.

280 N. W. 2d 64

Filed June 19, 1979. No. 42135.

Richard J. Bruckner, Mark Theisen, and Richard E. Shugrue, for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

The appellant, Pegasus of Omaha, Inc., plaintiff below, filed this action in the District Court for Douglas County, Nebraska, for a declaratory judgment holding that section 2-1221, R. R. S. 1943, is unconstitutional. After trial, petition of the plaintiff-appellant was denied. We affirm.

Section 2-1221, R. R. S. 1943, in the pertinent part, reads as follows: "Whoever for a fee, directly or indirectly, accepts anything of value to be wagered or to be transmitted or delivered for wager in any pari-mutuel or certificate system of wagering on horse races, or for a fee delivers anything of value which has been received outside of the enclosure of a race track holding a race meet licensed under Chapter 2, article 12, to be placed as wagers in the pari-mutuel pool or certificate system of wagering on horse racing within such enclosure shall be guilty of a misdemeanor * * *" and be punished as provided therein.

Article III, section 24, of the Constitution of Nebraska, generally prohibits games of chance and lotteries but further provides: "Nothing in this section shall be construed to prohibit the enactment of laws providing for the licensing and regulation of wagering on the results of horse races by the parimutuel or certificate method, when conducted by licensees within the race track enclosure at licensed horse race meetings, * * *."

Appellant concedes that the Legislature, in the exercise of its police power, may prohibit entirely games of chance or gambling and further implicitly admits that if the service offered by appellant could be determined to be gambling, the same would be absolutely prohibited as not falling within the exception of allowable gambling of Article III, section 24, of the Constitution of Nebraska. It is the appellant's contention then that the service offered is not gambling. At trial, the appellant offered evidence to show that Pegasus, a Nebraska corporation, engages in the messenger business. Its purpose is to transmit wagers for a fee for persons wishing to wager but unable or unwilling to attend a licensed horse race meeting. The appellant charges a flat 10 percent of the amount to be transmitted to the track. The terms and conditions of the contract appoint the appellant, Pegasus, as agent for persons using its

services and specifically states: "Money paid to Pegasus does not constitute a bet or wager. When tendered to Pegasus by a principal, Pegasus will provide an agent to be empowered by that principal to place such money in the parimutuel pool * * * of any enclosed race track which is licensed by the Nebraska Racing Commission to conduct race meetings." The Iowa Supreme Court in State ex rel. Turner v. Drake, 242 N. W. 2d 707 (Iowa, 1976), held a similar business did not constitute gambling. From this premise, Pegasus argues that it is conducting a beneficial and lawful business which, under Article I, section 3, of the Constitution of Nebraska, may not be taken away or destroyed under the guise of regulation. Article I, section 3, provides that no person shall be deprived of life, liberty, or property without due process of law. Pegasus contends that while the activity may be peculiarly subject to regulation, it is not within the power of the Legislature to absolutely prohibit an otherwise lawful occupation. It also argues that, in violation of the guarantee of equal protection, the classifications inherent in the statute bear no reasonable relationship to legitimate state policies. We shall deal with the appellant's assignments together.

It is not the position of the State that Pegasus' activities constitute gambling, but it is their position that in the exercise of its police power, a state may constitutionally prohibit an activity which the Legislature determines threatens the health, morals, or general welfare of the people of the state; that the business of Pegasus is, in fact, so intertwined with gambling that the Legislature may properly and has determined that the activity is one that constitutes a danger to the morals or general welfare of the people of this State and thus may be prohibited.

In determining that a statute nearly identical to Nebraska's was valid, the Illinois Supreme Court said: "Even if racetrack-messenger services were

operated without a hint of impropriety and even if we were to accept the doubtful proposition that these services do not constitute gambling itself, it is obvious that plaintiffs' business is completely intertwined with gambling and could not exist without it. As such, plaintiffs' business is within the State's plenary police power to regulate gaming activity. It is well within the authority of the State of Illinois to limit gambling on horse races to those who are at the track betting for themselves or betting for others only as a courtesy and not for a fee. In essence, this statute is part of the State's regulatory plan for limited gambling, and we find nothing in the Illinois or Federal constitutions which prevents its enactment or enforcement of such a statute." Finish Line Exp., Inc. v. City of Chicago, 72 Ill. 2d 131, 379 N. E. 2d 290.

The Illinois court considered the report of a special investigation by a legislative committee in its decision. A copy of the report was considered by a committee of the Nebraska Legislature which conducted hearings concerning the legislation outlawing messenger services. Appellant here contends that reception by the trial court of that report was error. They argue that it is irrelevant since Pegasus has not been shown to have engaged in any of the abuses cited therein. The objection misses the point. The report was relevant as part of the legislative history of the challenged statute. In its summary of the report, the Illinois court said: "Both houses of the General Assembly passed this amendment unanimously after the Illinois Legislative Investigating Commission reported a long list of serious and widespread problems with the messenger services, including booking of bets without buying the corresponding parimutuel tickets, failure to pay off winners, involvement of organized crime, and a reduction in track attendance and betting with a corresponding loss of local and State revenue. 'To be a

valid exercise of the police power, the enactment of the legislature must bear a reasonable relation to the public interest sought to be protected, and the means adopted must be a reasonable method to accomplish such objective. [Citations.]' (Sherman v. Reynolds, Inc. v. Mahin (1970), 47 Ill. 2d 323, 327, 265 N. E. 2d 640, 642.) In view of the reported problems, it cannot fairly be said that the legislature acted unreasonably in prohibiting the racetrack-messenger services from charging a fee rather than attempting to regulate those activities.'' Finish Line Exp., Inc. v. City of Chicago, *supra*.

The activity of Pegasus is so intertwined with gambling that, under its constitutional power to regulate, the Legislature may ban messenger services operated for a fee from accepting bets and conveying the bets to a licensed racetrack. The equal protection argument that persons who perform the service gratuitously are not also banned is frivolous. The evils which the Legislature had in mind are not likely to arise in the context of the friend who takes money to bet. The effect of all such activities would appear to be de minimis.

A legislative classification will be upheld against constitutional attack if it bears some reasonable relationship to the legitimate purposes of the legislation. See State v. Kells, 199 Neb. 374, 259 N. W. 2d 19.

The prohibited activity bearing a reasonable relationship to the regulation of gambling and no constitutional objection under the state and federal Constitutions rendering such prohibition unlawful, the decision of the trial court must be affirmed.

AFFIRMED.

KRIVOSHA, C. J., dissenting.

I must respectfully dissent from the majority opinion in this case. In upholding the constitutionality of the act in question, I believe that this court has retreated from a position which we have hereto-

fore held and maintained with pride, to wit, that a citizen clearly has the right to engage in any lawful occupation not detrimental to the public health, safety, and welfare without interference by the State.

As early as Carolene Products Co. v. Banning, 131 Neb. 429, 268 N. W. 313, this court said, "Measures adopted by the legislature to protect the public health and secure the public safety and welfare must have some relation to those proposed ends. If it is apparent that the statute, under the guise of a police regulation, does not tend to preserve the public health, safety or welfare, it is unconstitutional as an invasion of the property rights of the individual."

The majority suggests that while the messenger service in this matter in and of itself is not gambling nor illegal, it is so intertwined with gambling that the Legislature may determine that it *"threatens"* the health, morals, or general welfare of the people. The rationale for that conclusion is apparently that the messenger service, being intertwined with gambling and gambling being illegal, may be prohibited by the Legislature. That rationale would wash were it not for the fact that the State has specifically authorized, licensed, permitted, and made lawful the ultimate act, to wit, placing wagers on horses at the track. Section 2-1216, R. R. S. 1943, specifically provides as follows: "The system of wagering on the results of horse races, as hereinbefore provided, when conducted within the race track enclosure at licensed horse-race meetings *shall not under any circumstances* be held or construed to be unlawful, *any other* statutes of the State of Nebraska to the contrary notwithstanding. * * *." (Emphasis supplied.) How, then, can it be said that the act of delivering wagers to a lawful licensed location can be illegal when the ultimate act, the placing of the bet, is legal. It is difficult, if not impossible, for me to understand how two separate acts,

both legal in themselves, can become illegal when combined together. Under such a theory, printing the wager tickets, raising oats for the horses, or operating a taxi service to racetracks might be prohibited.

" 'The legislature has no authority to pronounce the performance of an innocent act criminal when the public health, safety, comfort or welfare is not interfered with * * *, and may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations.' " Carolene Products Co. v. Banning, *supra*.

"A citizen has a constitutional right to own, acquire, and sell property, and if it becomes apparent that the statute, under the guise of a police regulation, does not tend to preserve the public health, safety, or welfare, but tends more to stifle legitimate business by creating a monopoly or trade barrier, it is unconstitutional as an invasion of the property rights of the individual." Gillette Dairy, Inc. v. Nebraska Dairy Products Board, 192 Neb. 89, 219 N. W. 2d 214.

This court has consistently held that the regulation of legitimate business may not be so unreasonable as to result in the confiscation of property and the rights incidental to its ownership. This court cannot give judicial approval to legislation that violates these fundamental principles on any theory that they are permissible under the Constitution of the State of Nebraska. See, Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227; Gillette Dairy, Inc. v. Nebraska Dairy Products Board, *supra*. A business or occupation which has no tendency to affect or endanger the public in connection with health, safety, morals, or general welfare is not within the police power. Skag-Way Department Stores, Inc. v. City of Grand Island, 176 Neb. 169, 125 N. W. 2d 529.

It is not the carrying of the money to the track, but

rather the conducting of horse races, which could affect the health, safety, and welfare of the community. Yet, in enacting section 2-1216, R. R. S. 1943, the Legislature has said such activity is not detrimental to the health, safety, or morals of the public. If an individual may lawfully carry the money himself to the track, and if a livery service may likewise lawfully carry the individual carrying his own money to the track, it is difficult, if not impossible, to see how omitting the person in the transportation process could result in an act which therefore becomes detrimental to the health, safety, or welfare of the public.

While it is elementary that courts do not determine economic policies of the legislation and the wisdom of such legislation is for the Legislature to determine, nevertheless, it is just as elementary that in order for such legislation to be valid under the police power of the State, it cannot be arbitrary or discriminatory but must have a real and substantial relation to the object sought to be attained. Courts are not powerless to determine the character of such legislation. The construction of statutes and the determination of their reasonableness is the ultimate province, responsibility, and duty of the courts, and must be exercised by them if state and federal constitutional guarantees of liberty and property rights are not to be made subservient to the pressure groups which seek and frequently secure the enactment of statutes advantageous to a particular industry and detrimental to another under the guise of police power regulations. The preservation of constitutional guarantees against such invasions of constitutional rights is one of the foremost duties imposed upon the courts. Lincoln Dairy Co. v. Finigan, *supra*.

The record is totally devoid of any evidence of how or in what manner prohibiting any messenger service has any real and substantial relation to the objects sought to be attained, to wit, the protection of

public health, safety, or welfare. The only group that will appear to have benefited by the action of the majority herein are existing bookmakers. I have difficulty understanding how protecting them is necessary or proper under the police power of the State.

The majority suggests that the Legislature had before it an Illinois study showing that messenger services in Illinois were guilty of multiple abuses. I find little comfort or persuasion by that fact. Relying on evidence of abuse in business in Illinois might very well result in prohibiting almost any type of business in Nebraska.

The Legislature could reasonably and rationally cure all of the potential ills it has concerned itself with herein by simply licensing messenger services, bonding messenger services, and requiring them to file periodic reports. Nevertheless, the right to regulate does not likewise give the right to prohibit, absent some compelling public reason. See, Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388; 16 Am. Jur., Constitutional Law, § 321, p. 623.

My fear is that by upholding such legislative action as that taken herein, we have approved a practice of prohibiting an otherwise lawful business because it is said to be intertwined with a business which is normally unlawful but which in this case has been made lawful, while leaving the normally unlawful business to continue and flourish. There appears to be no prescribed limits to which that practice could be carried. I find that of grave concern, not so much with this particular case as with future matters for which this case stands as precedent.

I am authorized to state that Judges McCown and White join with me in this dissent.