NEBRASKA MESSENGER SERVICES ASSOCIATION and Jo Mooney, Ken Schwartz, Walt Bolton, Paul Allen, Ron Bernt and Peter Huffman, Appellants,

v.

Charles THONE, Governor of the State of Nebraska; Paul Douglas, Attorney General for the State of Nebraska; and Donald L. Knowles, County Attorney for Douglas County, Nebraska, Appellees.

No. 79–1820.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 10, 1979.

Decided Dec. 14, 1979.

Mark Theisen (argued) and Richard J. Bruckner, Omaha, Neb., on brief, for appellants.

Ralph H. Gillan, Asst. Atty. Gen. (argued) and Paul L. Douglas, Atty. Gen., Lincoln, Neb., on brief, for appellees.

Before BRIGHT, ROSS and STEPHEN-SON, Circuit Judges.

PER CURIAM.

Nebraska Messenger Services Association (Association) brought this purported class action seeking to have Neb.Rev.Stat. § 2–1221 (1978 Supp.) declared unconstitutional and its enforcement enjoined. That statute [1] makes illegal the services that members of the Association provide to Nebraskans who desire to participate in parimutuel betting on horseracing without personally attending the race. The district court, the Honorable Robert V. Denney, denied all relief [2] and the Association appeals. We affirm.

According to the appellant, members of the Association act as attorneys-in-fact for persons legally competent to purchase parimutuel tickets at Nebraska racetracks. The members of the Association accept no bets and quote no odds. Rather, they simply transfer their principals' monies into the parimutuel wagering pool for a ten percent service fee. The enactment of section 2–1221 outlaws services provided to the betting public for a fee by members of the Association. The Association attacks the validity of the statute on due process and equal protection grounds, charging that the prohibition of section 2–1221 cannot be sustained on any rational basis. We disagree.

The Nebraska Supreme Court has sustained this statute against similar attacks in *Pegasus of Omaha, Inc. v. State*, 203 Neb. 755, 280 N.W.2d 64 (1979). The court in that case noted that the constitution of Nebraska generally outlaws games of chance and lotteries but provides for laws licensing and regulating wagering on horse races by the parimutuel or certificate method. *Id.* 280 N.W.2d at 65. The court determined that fee-paid messenger services are so intertwined with parimutuel gambling that banning them is permissible under the state's power to regulate that gambling. The court further found permissible the distinction drawn between fee-paid and gratuitous services, because the distinction is reasonably related to the legitimate purposes of the legislation. *Id.* 280 N.W.2d at 67. The Illinois Supreme Court likewise upheld a similar statute in that state. *Finish Line Exp., Inc. v. City of Chicago*, 72 Ill.2d 131, 19 Ill.Dec. 626, 379 N.E.2d 290 (Ill.1978).

In reviewing the Nebraska legislation under federal constitutional standards, the district court observed that the statute in question regulates the commercial and business affairs of the state and thus must be held valid under the due process clause if it bears some rational relation to a legitimate state objective. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 491, 75 S.Ct. 461, 99 L.Ed. 563 (1955). The court further observed that the classification embodied in the state statute carries a presumption of validity and that the burden of proof of its unreasonableness rests with the party attacking its validity. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

The district court concluded that the Association has not met its burden under the due process clause:

Without reviewing all the possible justifications for this statute, it is clear to this Court that Neb.Rev.Stat. § 2–1221 (Supp. 1978) has a reasonable relationship to a legitimate state end. No one would question that the State of Nebraska has the power to regulate gambling in the interest of the public health, safety, and general welfare. Although the messenger services may not be gambling *per se*, such businesses are closely intertwined with gambling. Due to this close relationship, the Nebraska Unicameral could reason-

1. Neb.Rev.Stat. § 2–1221 (1978 Supp.) provides as follows:

Whoever for a fee, directly or indirectly, accepts anything of value to be wagered or to be transmitted or delivered for wager in any parimutuel or certificate system of wagering on horse races, or for a fee delivers anything of value which has been received outside of the enclosure of a race track holding a race meet licensed under Chapter 2, article 12, to be placed as wagers in the pari-mutuel pool or certificate system of wagering on horse racing within such enclosure shall be guilty of a Class II misdemeanor.

2. 478 F.Supp. 1036 (D.Neb.1979).

ably conclude that the public could only be protected from some of the evils of gambling by abolishing messenger services. [478 F.Supp. at 1038.]

 The appellant argues in addition that the statute violates equal protection by unlawfully discriminating against its service of placing bets for a fee; the statute does not prohibit the same practice if it is done without compensation, e. g., as an accommodation to a bettor. The district court determined, however, that this classification had a reasonable basis in the relative public risks posed by fee-paid and gratuitous services. See Dandridge v. Williams, 397 U.S. 471, 485–87, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

We agree with the district court and affirm on the basis of its opinion. 478 F.Supp. 1036 (D.Neb.1979). We also terminate forthwith the stay order entered by the district court on September 26, 1979, and extended by this court on October 1, 1979, which served temporarily to prohibit any prosecution of the members of the Association for violations of Neb.Rev.Stat. § 2–1221.

Affirmed.